Case No. 22-1143, GMS Mine Repair Petitioner v. Federal Mine Safety and Health Review Commission and Secretary of Labor, Mine Safety and Health Administration, MSHA. Mr. McHugh for the petitioner, Mr. Wilson for the respondent, Secretary of Labor. Mr. McHugh, good morning. Good morning, Your Honor. My name is James McHugh and I represent GMS Mine Repair and I would request two minutes for rebuttal. GMS appeals from the decision of the Federal Mine Safety and Health Review Commission, ALJ, interpreting 30 CFR 100.3c. In this case, GMS had five citations prior to the citations that were penalized in the previous 15 months. However, according to the Secretary's reading of the regulation, they were penalized as though they had 15 or 16 violations in the 15 months period discussed in 30 CFR 100.3c. In other words, during the look-back period in the regulation, they had five citations but they were penalized for 15. This resulted in a 100% increase in the penalty for GMS. In this case, GMS contends that ALJ erred in failing to apply 30 CFR 100.3c, as it's written, and also erred in failing to apply the analytical template in Kaiser v. Wilkie, which requires a multi-step process before declaring a regulation to be ambiguous. In this case, the judge just basically said, well, I look at this side and I see this side and I'm going to declare it ambiguous. But I didn't find that your request, it seemed like it also was somewhat ambiguous because you gave us a few ways to look at this. So I'm not sure what you've actually settled on in terms of the interpretation. Yes, Your Honor. GMS contends that there's a very clear three-step process in the regulation. There's two sentences at issue in the regulation. The first sentence talks about the violations that occur in the previous 15 months. Two key words in there, violation, which means an occurrence under Webster's, and in, as opposed to outside of. The Secretary wants to apply it as outside of the 15-month period. The second step is the next sentence, and that is, of that set of violations in the 15-month period, those that are not final are removed. This we call the due process step. And the key word there is the word only. That qualifier shows quite clearly that that sentence was intended to apply to the previous sentence and remove those regulations which are not final that occurred in the previous 15-month period. So as you are, I know that you have a third step about repeat violations, which doesn't seem to be at issue here. But just to follow up on Judge Child's question, as you just read it, it sounds like it talks about violations and the violations occurring within a 15-month period. And I had understood your argument to me, and tell me if it's incorrect, that the violation has to be assessed within the preceding 15 months and then finalized for that second sentence. Is that right? Our position, Your Honor, is that the violation has to occur first, and then when a violation occurs, it's cited. I'm sorry, citation, not assessed. Excuse me. So you think even if the citation had occurred within 15 months, but if the violation hadn't, that would be out? Because I understood your argument to be citation to in dispute. The act is charged to be violating the law. It doesn't have to be within the 15-month period. Can you clarify whether the violation also has to be in? Because that would be very different from how I understood your brief. I'm sorry. Yes, our position, Your Honor, is the violation itself must occur within the 15-month period. Because a violation, they use the word violation, they chose to use it. But by Webster's, it means the occurrence of a violated condition. So it has to occur within the 15-month period. And then, of course, it's cited usually on the same day, not always, but usually. And then oftentimes it's paid, 80 to 90 percent of them are paid immediately when they're assessed. Assessment comes a little bit later. But our position is it's the violation must occur in because we're following the regulation. So you have to have violation and citation and finalization of the process in whatever form it is. Correct. A lot of your arguments were about, as I understood them, were about the citation having to be there. And right on page 21 of your brief, you keep talking about issued violations and issued violations. And I don't know what an issued violation is. And so but just make clear. Citation isn't enough. It has to be the act of violation. That's your brief is not. That's not how I understood your brief. Okay. I apologize if we didn't make that clear. But that is the intent is that the violation has to occur within the 15 months because that's what's stated. And then, of course, it's cited most of the time, 95 or more percent. It's the same day that it's it's the violation occurs. And then sorry, how often is it the same day the violation occurs? Well, I'm just going off my total recollection. I don't think you don't have any record evidence on how often that happens. It's not in the record. But then just how does citation play into what you're asking to? Because if it's not occurring the same day, it seems like that throws off the math as well. Yes, your honor. Very few. I mean, the secretary, of course, has the data on this, but very few are not cited the same day. No, but citations not in here. Right. But you're using that term. Yes, your honor. I agree. I'm using that term because the citation is the written record of the violation. And I don't mean there's no way practically to know if a violated condition occurs unless there's a piece of paper that goes with it. That's that's kind of the way we interpret the word violation using dictionary and also the way that Webster's doesn't define. I'm sorry. It doesn't define a citation as a violation. I know, your honor, it does not. OK, it does not. Sorry. All right. What were then in your interpretation? Does the word assessed in the second sentence, the word assess? It means once the citation is issued, it does take the secretary a brief period of time before it's assessed by the the points, the penalty office. I can't remember what the name of it is. They take the citations in and then they assign. You saw the exhibit in here with they applied part 100 and crunched the numbers and come up with an assessment. All right. So your position is the first sentence by use of the word violations sets the date of occurrence. Yes. And then the only assessed violations in the second sentence refers to when the citation is actually issued. No, the assessed in the second is that that's like we call that the due process clause that was tacked on to the first sentence. You have the subset of those violations which are in paper and citations and then those that are assessed and get removed or not. Excuse me. I'm sorry. I misspoke. Not assessed and final get removed because they haven't been proven yet in court or or haven't been admitted to non-assessed and final. Isn't it assessed and non-final or. I mean, the assessment. The assessment tied to the final order. Yes, go ahead. What is the assessment? When does that You're right, your honor. It occurs just a short period of time after the citation has been issued. It is not a final definitely until it's admitted either in a when they send it the the operator sends in their contest and they they say we admit these and we deny this one or two. And and so it's assessed at that point, but it's not final until they so assessed relates to the fine. Assessed relates to the fine. Yes. Okay. Absolutely. I'm sorry. I didn't make that clear. I see I'm down to my rebuttal time. All right. We'll give you a couple minutes. Mr. Wilson. May it please the court. Good morning. My name is Robert Wilson. I represent the Secretary of Labor and the Mine Safety and Health Administration. I agree that there is a three-step analysis to be just not the one that GMS made. Proper analysis is what the Supreme Court articulated. Under that holding, there are three issues that need to be addressed. One, whether section 100.3c is ambiguous with regard to when violations are included in an operator's history of violations. It is number two, whether the secretary's interpretation of section 100.3c is reasonable. It is number three, whether the secretary's interpretation merits deference. It does. And then a fourth issue in this case is whether the administrative law judge admitted any errors when he material errors when he granted the secretary's motion for summary decision and denied GMS motion for summary decision. He did not. And can't this court do that Kaiser B. Whitney analysis? We don't need to send it back. I'm sorry. Can't we do that analysis here? Yes, Your Honor. As opposed to sending it back? Yes, Your Honor. Okay. Yes. There are a couple of facts I would like to emphasize for the court. First of all, the company does not contest that they committed any of the five violations at issue in this case. They stipulated to all of the penalty criteria other than history of violations. They stipulated that three of the five violations were significant and substantial, which means that they had a reasonable likelihood of resulting in serious injury or death. The other point is that under GMS's interpretation of the regulation, none of these violations would ever be included in their history of violations, simply because they took more than 15 months to become final. Can I ask you, if you know in your experience or your client knows how often citations are issued on the same day as a violation? I don't have a percentage, Your Honor, but as we pointed out in our brief, there are several instances when citations are not issued when violations occur. And the most prominent of those situations are fatal accident investigations, which is the most serious type of incident under the Minot Act. People die. And clearly the violations occur when the accident occurs, not when the citation is issued several months later. And I think that... Sorry, so citations can come even months after violations, including serious violations. Well, as an example, Your Honor, we cite in the brief to the Upper Big Ranch tragedy where 29 miners lost their lives. And that occurred in April of 2010. By the time the investigation was completed and contributory citations were issued, that was December of the following year. So under GMS's interpretation, by the time those violations were issued, they'd already be excluded from an operator's history of violations. That cannot be what was intended by Congress or by the Secretary when this regulation was promulgated. So is the sequence first the may be the same day, it may not. Then the assessment, which may attach to the citation, but not ever be the first day of the occurrence. Yes, Your Honor. And as we argued in the brief, I mean, the violation is basically a life of a violation from when the violation occurs all the way to when it becomes final. And in between that, you have the citation is issued sometime after that a penalty is assessed for the citation. The operator then contests the assessed penalty. So now it's a contested violation. And Section 100.3c simply says violations. It doesn't say citations. And I think, you know, counsel was was confusing those two issues here today. And the gap between the violation and then there can be a gap. And even be, I guess, sounds like a year or so a gap between violation and citation, especially in serious cases. And is there a general estimate or estimate on the gap between the citation and the assessment? Your Honor, in the in the preamble, it noted that on average, it takes about three months for a regular assessment to be assessed. And a regular assessment is where we go by the points, which is what we're dealing with. But there are other cases that may be specially assessed, which may take longer than the regular assessment. Can I ask you, since we're talking about the preamble, the sentence that says MSHA reviewed violations that were assessed in 2005 and determined that because it takes approximately three months, so on and so forth, would provide the agency with at least one full year of data. That to me indicates that it's going to reach back further, that there could be more than more than one year. In other words, it supports your reading of it. Yes, at least. In other words, it wasn't just one year. It was at least one year and it could be two years. Yes, Your Honor, and that provision of the preamble was addressing comments where the new rule, when this rule was promulgated, reduced the period of time that was being looked at from 24 months to 15 months. And commenters raised a concern that that wasn't going to give enough time for a full consideration of the operator's history of violation. And speaking of that, under the Big Mind citation, that occurred years later. And so how does that fit the kind of intent of the statute to get these repeat violations and or problematic violations for purposes of the assessment? Because that citation violation occurred years later. Years after the citation came from 20 months after the violation. Right. And that's that violation. I mean, the most serious violations under the act would never be considered as part of an operator's history of violations. And that's clearly directly contrary to what Congress intended. As this court held in and noted in Coal Employment Project versus Dole, Congress was intent on assuring that civil penalties provide an effective deterrent against all offenders and particularly against offenders with records of prior violation. And so what GMS's interpretation would do is it would it would defeat that intent by excluding valid violations from an operator's history simply because they took more than 15 months to become final. How long has the Department of Labor had the position you're arguing here, your interpretation of the regulation, how long has that been the interpretation the first written, which was when? I'm sorry, which was when? When did it always start? Well, with the promulgation, this current rule was promulgated in 2007. And that was the position of the secretary ever since. And it is clearly articulated in the preamble, which obviously was issued at the same time that the rule was promulgated. And in the preamble, during notice and comment, there were concerns raised that using only final orders would encourage mine operators to contest violations simply to eliminate them from their history of violation. Exactly what GMS is trying to do in this case. And in the preamble, the secretary said, quote, as each penalty contest becomes final, however, the violation will be included in an operator's could not be any clearer. And the secretary's interpretation of has been consistent ever since then. As the Commission Administrative Law Judge found another problem with GMS's interpretation is it would encourage contests and violations. And we all know that litigation takes time. By the time you go through discovery and depositions, you go to a hearing, wait for the And as we pointed out to the to the ALJ, and as he cited to in his decision, on the commission's website, they list all their decisions. And the 10 most recent ALJ decisions where a case went through the hearing process, all of them took more than 15 months to be fine. In fact, in GMS's brief, all of the cases that they cite to took more than 15 months to become except for one, which we note in our brief. And GMS argues that if we were to get to the Kaiser factors, that this doesn't implicate the secretary's expertise, this, this regulation or its interpretation, that it's just sort of a procedural thing. How would you explain? How can you tie this to this interpretation to the agency's expertise? Yes, your honor. And this very court addressed that issue in Doe versus SEC. And we didn't talk about the secretary expertise on mining in an SEC case. I really want to know exactly what on the ground here, what in reality would make your expertise implicated? Well, Congress authorized not only authorized, but ordered the Secretary of Labor to promulgate regulations to, to implement the civil penalty process. And so Congress entrusted the secretary with that task. And so that puts it within the secretary's expertise. What is the connection between enforcing a civil penalty process and the secretary's clear duty to promote mine safety? Well, the ultimate purpose of the Mine Act is to promote safety and protect the health and safety and lives of mines. And what civil penalties do is they provide an incentive for mine operators to comply. For the more compliance leads to fewer violations, fewer hazards, which leads to fewer deaths and fewer. And so then the concern is that under GMS's view, there would be less enforcement and so less incentive to promote safety. Yes. Under GMS's interpretation, an operator could simply test violations, drag out the finality for more than 15 months. Those violations would then never be included in an operator's history of violations, which would reduce penalties, which Congress recognized as an incentive to comply. And so therefore it would reduce compliance, increase hazards and violations. And to what degree is the secretary's interpretation really just kind of a policy-laden choice? Well, I mean, to an extent there wasn't a policy decision made by the secretary that they would include final violations in the look back period and not as we discussed on issued or occurrence date or assessment date, they would look at a final date, which corresponds with the second sentence in the regulation. And then we also have in here that it becomes final within the relevant 15-month period. So discuss with me the periods of assessment, if you will, because obviously it's almost like a statute of limitations in what comes within that period and what's outside of that period. So what are those kind of periods of assessment points? Right. So it varies from case to case. Like I said, in the Upper Big Branch case, it was some 20 months between when the violation occurred and when the citation was assessed or when the citation was issued. And then most violations are assessed a penalty sometime after the citation is issued. As the preamble said, average time is three months, but it could be more or less than that. And then how long it takes for that to become final is just up to the individual case. We pointed out in our brief, there were instances where violations have not become finals 10 years later. And I guess I'm asking the question a little differently. When are you trying to capture the information? Like at what points in time? When is it relevant or matters to the Secretary of Labor about these violations? Are there certain reporting periods? The date when the violation is included in an operator's history of violations is the date it becomes a final order of the commission. In other words, when it is finally resolved. And that takes into account the due process concern that it wouldn't be fair to mine operators who include violations that may later be vetted. I see my time is way beyond. All right. Thank you. Thank you very much. Mr. McHugh, why don't you take two minutes? 30 CFR 100.3C is a policy decision by the Secretary. They made a very specific policy decision when they drafted it the way they drafted it. Nowhere in the Secretary's argument does the Secretary explain where in the regulation it says that you can include violations that were They made, if you read the preamble, it's quite clear that what they wanted to do and the policy decision was for history, we need the most recent violations. If you look at the part in the preamble about repeat, it becomes very clear. They said, we want to look back at the last three or four inspections and see if they're doing the same thing over and over again, so we can determine if they violated, if they've got a bad history. And that's exactly what the Like I said, the regulation itself mentions a 15-month period in connection with violations in. It doesn't say 15-month period violations outside. So page 21 of your opening brief, where you first tell us what your step one is, you don't talk about the violation, you talk about the citation. Step one, the regulation considers the date of the citation issue. And then you go down any citations issued more than 15 months prior to the citation dispute will not count because under the clear standard, only the citations issued in the preceding 15 months are part of the universe of relevant citations in the first step of the process. But your argument this morning hasn't been what your blue brief says. It has been the violation rather than the citation. And you've come to us with a plain language argument. But now I'm seeing your plain language shifting from your brief to your oral arguments. So how can it possibly be plain if you're not even using the same language in your brief that you're using an oral argument? Your Honor, because citation is the only record of a violation. There can be a violation at the mine today, but nobody knows about it. It's underground. No one sees it. That's exactly the point. The citation could come later. They find out about it later, minor complaints, someone reports it. Maybe the owner is good and reports it. But in this case, normally what happens is I know there's situations with accidents where it comes later and there's an investigation, but those are like the sky's falling situation where the vast majority of these things happen right on the day. Yeah, but they're right that those would not be included in the history for your purposes. Right. And why would Congress not want the most serious death-causing violations not to be included? Your Honor, obviously the Secretary had the ability to draft policy on penalties, and they did that when they drafted 100.3. They made a policy decision that they wanted to get a recent snapshot as opposed to a holistic over the length of a long period of time. Well, as Judge Henderson said, they said at least 12 months. That doesn't mean they're at least reaches further back than that. My reading of the sentence that the Court mentioned was it's got a 15-month period that in response to the questions in the preamble, they said it only takes three months for the citation to become final, and therefore we'll still have a 12-month snapshot and we'll still have a 12-month history. And that's what we want to do. And oh, by the way, we're adding this repeat section that wasn't in there before to counterbalance the fact that we've reduced the snapshot, the 24 months, to 15 months. So there was a trade-off, a policy trade-off, when they drafted the regulation. And it's very clear in the preamble how they came to that conclusion. And also as far as these serious violations, the history under Part 100 doesn't mention anything about the level of severity. That comes under a different part of the penalty regulation. It's under likelihood and negligence. Whereas the history was simply raw numbers of violations. It wasn't intended to be like a double-dipping situation, what the Secretary is talking about. That's why they have the six different criteria that the Court follows. So our position is that, in essence, the Secretary wrote this regulation, it set forth a policy, and then it proceeded to ignore it. And, you know, this case just happened to show a really extreme example of it because GMS had five citations, but it was penalized for 15. And so it was just an extreme example just to bring it to the Court's attention that the Secretary wasn't following its own regulation. All right. We've got your argument. Thank you. Thank you.
judges: Henderson, Millett, Childs